**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No.: ________________________

MIRAH ZACK,

Plaintiff,

v.

NOVA SOUTHEASTERN UNIVERSITY, INC.,

d/b/a BAUDHUIN PRESCHOOL,

Defendant.

________________________________________/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, Mirah Zack, sues Defendant, Nova Southeastern University, Inc., d/b/a Baudhuin Preschool, and states as follows:

**NATURE OF THE ACTION**

1. This is an action for disability discrimination, failure to accommodate, and retaliation brought under Title I and Title V of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., and the Florida Civil Rights Act, Fla. Stat. § 760.01 et seq.

2. Plaintiff was employed by Defendant as an Exceptional Student Education teacher. After she reported a colleague's failure to follow a disabled student's Behavior Intervention Plan, Defendant subjected her to escalating retaliation. After Defendant approved a reasonable accommodation for Plaintiff's own disabilities, Defendant denied her the use of that accommodation and then attempted to rewrite it so it no longer covered the work for which she needed it. Defendant's conduct forced Plaintiff out of her job.

**JURISDICTION AND VENUE**

3. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under federal law, and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

4. Venue is proper under 28 U.S.C. § 1391(b) because Defendant operates Baudhuin Preschool at 7600 SW 36th Street, Davie, Florida, within the Southern District of Florida, and the events giving rise to this action occurred there.

## PARTIES

5. Plaintiff Mirah Zack is a resident of Hollywood, Florida, and was at all relevant times an employee of Defendant within the meaning of the ADA and the Florida Civil Rights Act.

6. Defendant Nova Southeastern University, Inc. is a Florida corporation that operates Baudhuin Preschool at 7600 SW 36th Street, Davie, Florida 33328. Defendant employed 15 or more employees during each of twenty or more calendar weeks in the current or preceding calendar year and is an employer within the meaning of the ADA and the Florida Civil Rights Act.

## ADMINISTRATIVE EXHAUSTION

7. On July 13, 2026, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission, dual-filed with the Florida Commission on Human Relations, docketed as EEOC No. 510-2026-06280.

8. The Charge described a continuing course of retaliation and accommodation denial that began with Plaintiff's protected report on October 1, 2025, and continued through her separation from employment. The acts described in this Complaint that predate the date range listed on the Charge form are part of that same continuing course of conduct and are reasonably related to, and grew out of, the allegations in the Charge.

9. The EEOC investigated and issued Plaintiff a Notice of Right to Sue. Plaintiff files this action within ninety days of receipt of that Notice.

10. More than 180 days have elapsed since Plaintiff dual-filed her charge with the Florida Commission on Human Relations, satisfying Fla. Stat. § 760.11(8).

11. Plaintiff has exhausted all administrative prerequisites to suit under the ADA and the Florida Civil Rights Act.

## FACTUAL BACKGROUND

12. Plaintiff began working for Defendant as a Teacher’s Aide at Baudhuin Preschool on January 9, 2023. Plaintiff became a teacher in January 2024.

13. Plaintiff has diagnosed anxiety, dyslexia, and ADHD. Each condition substantially limits one or more major life activities, including concentrating, reading, and processing information, and each is a disability within the meaning of the ADA.

14. Before October 2025, Plaintiff maintained an exemplary employment record, including a "Proficient" rating on her FY25 performance evaluation and a perfect score on her professional orientation evaluation.

15. On October 1, 2025, Plaintiff observed Jacqueline Curnow, a Board Certified Behavior Analyst employed by Defendant, fail to follow the Behavior Intervention Plan of a disabled student in Plaintiff's classroom. A Behavior Intervention Plan is a legally binding document. Curnow did not stop the student from engaging in self-injurious behavior, directed Plaintiff to ignore the student's protests, and prevented Plaintiff from comforting the student.

16. That same afternoon, Alexandre Lopes, the Director, convened an unscheduled meeting with Plaintiff, Curnow, and Heather Dern, an Autism Specialist. Lopes accused Plaintiff of "bad mouthing" Curnow and pressured Plaintiff to apologize to her in front of the group, requiring Plaintiff to describe her safety concerns in front of the person who had endangered the student.

17. Also on that same afternoon, Plaintiff, acting pursuant to Plaintiff’s duty as a mandated reporter, submitted a report to the Florida Department of Children and Families (“DCF”). DCF subsequently notified Plaintiff by email that it would not accept the report for

investigation because “the concerns do not rise to the level of reasonable cause to suspect harm.”

18. That evening, Plaintiff submitted a written safety report describing the incident to the Office of Human Resources. This report was protected activity under 42 U.S.C. § 12203(a) because it opposed conduct that endangered a disabled student's federally protected rights.

19. After the meeting, Curnow increased her presence in Plaintiff's classroom.

20. On October 10, 2025, after Plaintiff consulted Dern about student support, Curnow told Plaintiff's entire teaching team that they could direct behavior-related questions only to her, cutting the team off from other support staff authorized to provide behavior management guidance.

21. On October 15, 2025, administration accused Plaintiff of failing to follow the student's Behavior Intervention Plan during the October 1 incident. Plaintiff submitted evidence that she had been present only as an observer and had no role in implementing the plan. Yatzie Gonzalez-Nunez, an HR Employee Relations Consultant, closed Plaintiff's safety and retaliation report without taking any action.

22. On October 21, 2025, Carmen Session, the Associate Dean, and Lopes reprimanded Plaintiff for an alleged delay in reporting the October 1 incident, although Plaintiff had reported it that same day to both Lopes and Human Resources. Session told Plaintiff not to bring future safety concerns to Human Resources. Plaintiff's repeated requests to assign a different behavior analyst to her classroom went unanswered.

23. On October 30, 2025, Gonzalez-Nunez sent Plaintiff an amended closure letter stating that Curnow's failure to follow safety protocols was "academic in nature and outside the purview of the Office of Human Resources."

24. On December 3, 2025, Curnow declined to extend Plaintiff's access to the digital behavior-tracking graph she needed for her student. Upon learning of the digital graph's existence in March 2026, Plaintiff promptly entered all outstanding data from her paper records. Carmen Session later relied on this bulk entry of data, covering December 2025

through March 2026, to question Plaintiff's integrity and the validity of the collected data, disregarding the underlying paper records.

25. On December 16, 2025, Plaintiff asked Lauren Analetto, the Associate Director, to provide additional training for a practicum student, Emily, whose conduct was escalating a student's challenging behaviors. Analetto agreed to assign support staff to provide the training but never did.

26. Between January and March 2026, Plaintiff repeatedly asked administration to train the inexperienced aide assigned to her classroom. Administration repeatedly promised support and never provided it.

27. On February 10, 2026, during a child study meeting, Plaintiff again raised the need for training for the practicum student, Emily, who was then removed from the classroom. Plaintiff has requested training for Emily and her classroom aide, Delisha, on multiple occasions. Lopes responded by removing Emily from Plaintiff's classroom entirely and told Plaintiff he was doing so "because of what [Plaintiff] said," leaving her classroom without support.

28. On February 25, 2026, Analetto and Lopes opened an inquiry after a classroom observation, first citing missing lesson plan targets. After Plaintiff sent a written summary of the meeting, the stated basis for the inquiry changed to a claim that her aides did not know where data sheets were kept. Plaintiff obtained written statements from both aides confirming that Analetto never asked them about the data sheets.

29. On March 2, 2026, Lopes admitted that he searched Plaintiff's classroom folder on the school's shared drive because Plaintiff had defended herself in writing.

30. On March 23, 2026, Session opened an audit of Plaintiff's past paperwork and gave her 48 hours to respond.

31. On March 24, 2026, Defendant formally approved Plaintiff's request for a reasonable accommodation under the ADA, granting her extra time to process non-urgent administrative tasks because of her anxiety, dyslexia, and ADHD.

32. On March 25, 2026, Ronenia Jenkins, the HR Senior Benefits Administrator, granted Plaintiff an extension on the 48-hour audit deadline using this accommodation, confirming that the accommodation could be applied to audit-related paperwork.

33. On March 27, 2026, Plaintiff submitted evidence to Human Resources that other teachers with missing data and incorrect lesson plans were not subjected to comparable audits or scrutiny. Sonia Davidson, Gonzalez-Nunez, and Faustine Waryjas, all HR representatives, did not respond to this evidence.

34. On April 13, 2026, administration downgraded Plaintiff's performance review, citing confusion caused by the untrained aide that administration itself had refused to train despite Plaintiff's repeated requests.

35. On April 14, 2026, Session demanded that Plaintiff compile twelve weeks of past paperwork and provide detailed written explanations within days, including information not ordinarily required to be tracked by any teacher. Plaintiff reported this conduct to the University Compliance Office. The Compliance Office did not respond.

36. On April 15, 2026, Plaintiff asked to use her approved accommodation of extra processing time to complete the twelve-week audit. Gonzalez-Nunez denied the request. As a result, Plaintiff worked unpaid hours outside her contracted schedule to meet the deadline.

37. On May 6, 2026, during a meeting about the audit, Gonzalez-Nunez repeatedly raised her voice, interrupted Plaintiff, and dismissed her concerns.

38. Between May 5 and May 7, 2026, Plaintiff asked Jenkins to correct her accommodation letter to match the terms reached during the interactive process, that the accommodation did not apply to direct student interaction. Instead, Jenkins attempted to rewrite the accommodation so that it no longer applied to paperwork or recordkeeping at all, which was the task for which Plaintiff most needed it.

39. Plaintiff sent a written follow-up to Sharon Scruggs, the Director of Employee Relations, documenting that the May 6 meeting had been hostile and that the encounter had triggered her medical condition. Plaintiff invoked her accommodation to request that

further communication about the investigation occur in writing. Plaintiff continued to cooperate with the investigation and answered the investigatory questions in writing.

40. On May 7, 2026, because Defendant had withdrawn her ability to use her medical accommodation for the tasks that required it and had left her no functioning avenue to report ongoing retaliation, Plaintiff notified Defendant that she could not accept a new employment contract for the coming year.

41. On May 15, 2026, Jenkins issued a final written refusal to correct Plaintiff's accommodation letter. Around the same time, Plaintiff obtained evidence that other teachers with comparable paperwork errors were not audited or disciplined.

42. Plaintiff's last day of work was June 3, 2026. The denial of her medical accommodation for the tasks that required it, the sustained retaliatory scrutiny that followed her October 2025 report, and a reporting structure that closed every complaint she raised left her no way to continue performing her job.

43. As a direct result of Defendant's conduct, Plaintiff suffered lost wages and benefits, physical exhaustion, and emotional distress requiring ongoing treatment.

**COUNT I – RETALIATION IN VIOLATION OF THE ADA (42 U.S.C. § 12203(a))**
**(Against Defendant Nova Southeastern University, Inc.)**

44. Plaintiff realleges the allegations in the section titled Factual Background above as if fully set forth in this Count.

45. Plaintiff engaged in activity protected under 42 U.S.C. § 12203(a) when she reported, in writing, on October 1, 2025, that a staff member had endangered a disabled student by failing to follow his Behavior Intervention Plan, and when she continued to press that report through subsequent written complaints to Human Resources and the University Compliance Office.

46. Beginning the same day as her report and continuing through her separation, Defendant subjected Plaintiff to materially adverse actions, including the October 1, 2025 meeting requiring her to apologize to the person who endangered the student, the October 21,

2025 reprimand and instruction not to report future safety concerns to Human Resources, the February 10, 2026 removal of classroom support that Lopes tied directly to Plaintiff's statements, the escalating March and April 2026 audits, the April 13, 2026 downgraded performance review, and the denial of her accommodation for the April 2026 audit.

47. A reasonable employee in Plaintiff's position would have found each of these actions, and the cumulative effect of all of them, materially adverse, in that they were reasonably likely to dissuade a reasonable employee from making or supporting a charge of discrimination.

48. A causal connection exists between Plaintiff's protected activity and Defendant's adverse actions. As Plaintiff was on her way to report the safety incident to Lopes, Lopes intercepted her and brought her into his office, where Heather and Jacqueline were waiting. Plaintiff reported the safety incident to Alex during this meeting, but when he disregarded her concerns, she escalated the matter to HR. Lopes admitted on February 10, 2026, that he removed classroom support "because of what [Plaintiff] said." Lopes admitted on March 2, 2026, that he searched Plaintiff's files because she had defended herself in writing. The audits and scrutiny directed at Plaintiff intensified in direct proportion to her continued reporting, while similarly situated teachers who had not engaged in protected activity were not subjected to comparable scrutiny despite comparable or greater paperwork errors.

49. The cumulative retaliatory conduct, including Defendant's denial of Plaintiff's medical accommodation for the audit it used to punish her, made Plaintiff's working conditions so intolerable that a reasonable person in her position would have felt compelled to resign, and Plaintiff was in fact forced to leave her employment as a result.

50. As a direct and proximate result of Defendant's retaliation, Plaintiff has suffered lost wages and benefits, past and future, and emotional distress.

WHEREFORE, Plaintiff demands judgment against Defendant for back pay, front pay, compensatory damages, punitive damages, reasonable attorneys' fees and costs, and such other relief as the Court deems just.

**COUNT II – FAILURE TO ACCOMMODATE IN VIOLATION OF THE ADA (42 U.S.C. § 12112(b)(5)(A)) (Against Defendant Nova Southeastern University, Inc.)**

51. Plaintiff realleges the allegations in the section titled Factual Background above as if fully set forth in this Count.

52. Plaintiff has anxiety, dyslexia, and ADHD, each a disability within the meaning of the ADA, and Defendant had actual notice of these disabilities no later than March 24, 2026.

53. Plaintiff was a qualified individual able to perform the essential functions of her ESE teaching position, including maintaining student records, developing and implementing IEPs, and preparing lesson plans, with the reasonable accommodation of extra time to process non-urgent administrative tasks.

54. On March 24, 2026, Defendant formally approved that accommodation. On March 25, 2026, Defendant applied it to extend an audit deadline, confirming the accommodation covered exactly the type of administrative paperwork task at issue in this case.

55. On April 15, 2026, when Plaintiff sought to use that same accommodation for the twelve-week retroactive audit Defendant had itself created, Gonzalez-Nunez denied the request. Defendant offered no undue hardship justification for the denial.

56. Between May 5 and May 15, 2026, rather than restore Plaintiff's ability to use her accommodation, Jenkins attempted to permanently rewrite the accommodation letter to exclude paperwork and recordkeeping entirely, removing the only accommodation that addressed the tasks causing Plaintiff harm.

57. Defendant's denial and attempted revocation of Plaintiff's approved accommodation forced her to work unpaid hours outside her contracted schedule and directly worsened her medical conditions.

58. Defendant failed to engage in a good faith interactive process after Plaintiff raised the mismatch between the written accommodation letter and the terms reached during the interactive process, and instead used that process to narrow her accommodation rather than correct it.

59. As a direct and proximate result of Defendant's failure to accommodate, Plaintiff suffered lost wages and benefits, physical harm, and emotional distress.

WHEREFORE, Plaintiff demands judgment against Defendant for back pay, front pay, compensatory damages, reasonable attorneys' fees and costs, and such other relief as the Court deems just.

## COUNT III – RETALIATION IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT (Fla. Stat. § 760.10(7)) (Against Defendant Nova Southeastern University, Inc.)

60. Plaintiff realleges the allegations in the section titled Factual Background above as if fully set forth in this Count.

61. Plaintiff engaged in activity protected under Fla. Stat. § 760.10(7) when she reported, in writing, on October 1, 2025, that a staff member had endangered a disabled student, and when she continued to press that report through subsequent written complaints.

62. Defendant subjected Plaintiff to the same adverse employment actions described in Count I, including disproportionate scrutiny, professional isolation, retroactive audits, a downgraded performance review, and denial of her medical accommodation for the audit used to punish her.

63. A causal connection exists between Plaintiff's protected activity and these adverse actions for the same reasons stated in Count I, including Lopes's admissions that his actions were taken because of Plaintiff's statements and written defense of herself.

64. Defendant's conduct made Plaintiff's working conditions so intolerable that she was forced to resign.

WHEREFORE, Plaintiff demands judgment against Defendant for back pay, front pay, compensatory damages, reasonable attorneys' fees and costs, and such other relief as the Court deems just.

## COUNT IV – DISABILITY DISCRIMINATION AND FAILURE TO ACCOMMODATE IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT (Fla. Stat. § 760.10(1)(a)) (Against Defendant Nova Southeastern University, Inc.)

65. Plaintiff realleges the allegations in the section titled Factual Background above as if fully set forth in this Count.

66. Plaintiff has anxiety, dyslexia, and ADHD, each a disability within the meaning of the Florida Civil Rights Act, and Defendant had actual notice of these disabilities no later than March 24, 2026.

67. Plaintiff was able to perform the essential functions of her position with the reasonable accommodation Defendant approved on March 24, 2026.

68. Defendant denied Plaintiff the use of that accommodation on April 15, 2026, and attempted to permanently narrow it between May 5 and May 15, 2026, so that it no longer covered the paperwork and recordkeeping tasks for which Plaintiff needed it.

69. Defendant's denial and attempted revocation of Plaintiff's accommodation were motivated by and connected to her disability and forced her to work unpaid hours and endure conditions that worsened her medical conditions.

WHEREFORE, Plaintiff demands judgment against Defendant for back pay, front pay, compensatory damages, reasonable attorneys' fees and costs, and such other relief as the Court deems just.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated August 6, 2026

Respectfully Submitted,

/S/ *Anthony Georges-Pierre*

Anthony M. Georges-Pierre, Esq.
Florida Bar No. 533637
**REMER, GEORGES-PIERRE,**
**& HOOGERWOERD, PLLC**
2745 Ponce De Leon Blvd

Coral Gables, FL 33134
Email: agp@rgph.law
Telephone: 305-416-5000

*Counsel for Plaintiff*